## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **K.A.,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 1:25-cv-2930 (SLS)** |
| **THE DISTRICT OF COLUMBIA,** *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION

Defendants District of Columbia and Sam Abed, Director of the Department of Youth and Rehabilitation Services (collectively, the District Defendants), move under Fed. R. Civ. P. 12(b)(6) to partially dismiss Plaintiff's Complaint against them for failure to state a claim for relief. *First*, as to the constitutional claims, Plaintiff fails to plausibly allege one of the four avenues toward a municipal liability claim under 42 U.S.C. § 1983, and then improperly seeks to bootstrap a standalone substantive due process claim for the same reasons against the District and Director Abed on the basis of the acts of a third party. *Next*, Plaintiff's common law claims, except the negligence claim against the District, all fail on a Fed. R. Civ. P. 12(b)(6) motion, as duplicative thereof or for failure to plausibly allege the requisite elements. The allegations do not support a negligent hiring claim, nor do they support the requisite notice or knowledge for one based on Defendant Powell's supervision or training. Plaintiff's attempt at a novel claim— negligent failure to enact and enforce policies to prevent sexual abuse—should be readily discarded. *Finally*, any claims for infliction of emotional distress are improper. The facts do not

support a narrow cause of action for negligent infliction of emotional distress, and any

intentional infliction of emotional distress claim is properly asserted against Defendant Powell.

## FACTS

Plaintiff K.A., who proceeds under a pseudonym, filed an eight-count Complaint in

Superior Court of the District of Columbia on June 3, 2025, alleging both common law and

constitutional claims against Defendants, arising out of allegations of Defendant Kelvin Powell's[1]

sexual abuse of then-minor Plaintiff. *See generally* Pl.'s Compl. [1-1]. District Defendants timely

removed the case to District Court on August 29, 2025, *see* District Defs.' Not. of Removal [1], as

it presents several questions of federal law. Plaintiff asserts claims of municipal liability under 42

U.S.C. § 1983 (against the District and Abed, Count I), negligence (the District and Abed, Count

II), negligent hiring, training, and supervision (the District and Abed, Count III), negligent failure

to enact and enforce policies that would prevent sexual abuse (the District and Abed, Count IV),

negligent and intentional infliction of emotional distress (all Defendants, Count V), violation of

the Fifth Amendment due process clause of the United States Constitution (all Defendants, Count

VI), sexual assault (Powell, Count VII), and false imprisonment (Powell, Count VIII). *See*

*generally* Pl.'s Compl. District Defendants move to dismiss most claims against them.

## I.    Plaintiff's Allegations Concerning Interactions with Defendant Powell

Plaintiff alleges Defendant Powell, a staff member at the Youth Services Center (YSC),

sexually assaulted her while she was housed there between December 2021 and February 2022.

*See id.* ¶¶ 1–2. She alleges Defendant Powell kissed her, groped her, required that she perform

oral sex upon him and accept oral sex from him, and raped her. *Id.* ¶ 2. Plaintiff alleges the

District, "at all relevant times to this action," was responsible for children "incarcerated under its

---

[1]      The undersigned does not, and will not, represent Defendant Powell in this action.

authority," *id.* ¶ 16, including Plaintiff. She alleges the District controls and operates the Department of Youth and Rehabilitation Services (DYRS), *id.* ¶ 17, and that Director Abed is responsible for the administration of DYRS, which "bears absolute, non-delegable legal responsibility and the highest duty of care, under District of Columbia law, to ensure the safety, protection, and the wellbeing of vulnerable children who are housed within its facilities," *id.* ¶ 18.

Plaintiff alleges she was housed in the YSC, a detention center that houses boys and girls in the juvenile justice system, *see* Pl.'s Compl. ¶ 21, in October 2021, when she was 17 years old, *id.* ¶ 25. She alleges she was placed on A100, the only girls' unit in the YSC. *Id.* ¶ 26. Plaintiff alleges Defendant Powell worked as a Youth Development Representative (YDR), providing continuous observation, supervision, and on-the-spot counsel to the detainees. *Id.* ¶¶ 27–28. She alleges Defendant Powell began to take interest in her in November 2021, when he would bring her outside food and beverages. *Id.* ¶ 32. Plaintiff alleges that, despite DYRS policy mandating there be two YDRs on a unit at any time, Defendant Powell was regularly left alone as the only staff member on the girls unit. *Id.* ¶¶ 30, 33. She alleges Defendant Powell "repeatedly" sexually assaulted Plaintiff between December 2021 and February 2022 as follows: that, in December 2021, Defendant Powell was captured on surveillance footage grabbing Plaintiff's buttocks; that, "[o]n no less than three occasions," Defendant Powell was alone on the A100 unit, entered Plaintiff's cell, and kissed her, groped her breasts and buttocks, and forced her to touch his penis; that, "[o]n no less than three occasions," Defendant Powell stood or sat outside Plaintiff's cell and gestured or told Plaintiff to take off her clothing and touch herself for him; and that, "[o]n at least one occasion," Defendant Powell instructed Plaintiff to enter another girl's cell on the A100 unit, to wait for him there, and once in there, Defendant Powell kissed Plaintiff. *Id.* ¶ 35.

Plaintiff alleges Defendant Powell's conduct continued into January 2022, when he started

to escort her off the A100 unit alone to make "Level 5" phone calls, personal phone calls that do not have to be approved by a resident's parent or guardian. *See* Pl.'s Compl. ¶¶ 36–37. Plaintiff alleges Defendant Powell would take Plaintiff to individual staff offices in the evenings, and that Defendant Powell would sexually assault Plaintiff during these trips. *Id.* ¶¶ 38–39, 41. Sometime between January and February 2022, Plaintiff alleges Defendant Powell told Plaintiff to bend over the desk and raped her. *Id.* ¶ 41. She further alleges several occasions where Defendant Powell forced Plaintiff to grab her breasts, himself grabbed her breasts and buttocks, forced Plaintiff to grab his penis, instructed her to pull down her pants and expose her vagina and buttocks to him, and rubbed his penis against her buttocks from behind her. *Id.* She alleges that, one time, he instructed her to place her leg on the desk and licked her vagina; one time, he forced her to perform oral sex on him; and, one time, he licked her buttocks. *Id.* On at least three other occasions, Plaintiff alleges Defendant Powell sat outside the staff office watching Plaintiff, and instructed her to expose her breasts, buttocks, and vagina for him to see. *Id.*

Plaintiff alleges that the YSC was equipped "with a number of surveillance cameras" in the A100 unit and that YSC staff were assigned to "actively monitor" real-time surveillance footage therefrom, but that YSC staff failed to do so. *See* Pl.'s Compl. ¶¶ 42–43, 49. Plaintiff alleges surveillance footage from December 2021 to February 2022 shows Defendant Powell "repeatedly entering" Plaintiff's cell alone and "staying in there for several seconds before exiting," *id.* ¶ 45; "looking back and forth" before he enters and exits the cell, *id.* ¶ 46; gesturing for Plaintiff to enter her room, following closely behind, and staying for several seconds, *id.* ¶ 47; and adjusting his mask as he enters and exits the rooms, *id.* ¶ 48. Plaintiff alleges Defendant Powell was able to sexually assault her "due to the failures and negligence of Defendants," *id.* ¶ 50, presumably in reference to this failure to monitor live-time footage.

Plaintiff alleges Defendant Powell assaulted other children at YSC previously, Pl.'s Compl. ¶ 57, and that Defendants knew or should have known thereof, *id.* ¶ 58. She alleges that Defendant Powell, in 2018, engaged in sexual intercourse with 17-year-old YSC resident A.B. for money, *id.* ¶ 59, and that he showed a video of him having sex with A.B. and A.B. performing oral sex upon him to two YSC staff members, *id.* ¶ 60. Plaintiff alleges Defendant Powell also sexually assaulted another young girl, A.M., in YSC, touching her buttocks, rubbing her thighs, and making sexual comments to her. *See id.* ¶¶ 65–66. Plaintiff does not allege when this assault occurred, but alleges the assaults of A.M. continued after her release from YSC. *See id.* ¶¶ 65–67. She alleges Defendant Powell placed his hand on the inner crotch area of another girl, E.S., in YSC's intake room, *id.* ¶ 68, and that he engaged in sexual intercourse with X.W. after her release from YSC, *id.* ¶ 69, telling DYRS staff members he gave X.W. money for an abortion, *id.* ¶ 70. She alleges Defendant Powell kissed a former YSC resident at a DYRS event, *id.* ¶ 71, and that he was known among DYRS staff as "Red Roof Inn" because he would allegedly take girls to the hotel after they released from the YSC for sex, *id.* ¶ 72.

Plaintiff alleges Defendant Powell's conduct extended beyond engaging in sex acts with female YSC residents, current and former, and that, "[u]pon information and belief," he facilitated sex between young girls and DYRS staff in exchange for money. *See* Pl.'s Compl. ¶ 73. Plaintiff does not allege any more particular examples of this. *See id.* Plaintiff alleges, "[u]pon information and belief," that Defendant Powell demonstrated favoritism toward female residents rather than male residents at the YSC, *id.* ¶ 74, and that he "spoke openly" about his desire to engage in sex acts with teenagers at the YSC, *id.* ¶ 75—also without any more particular allegations thereof.

## II.    **Plaintiff's Allegations Concerning Particular Claims**

### A.    **Constitutional Claims**

Plaintiff pursues two constitutional claims against the District Defendants: for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), *see* Pl.'s Compl. ¶¶ 78–97, and for a Fifth Amendment due process violation, *see id.* ¶¶ 202–16.

In support of the *Monell* claim, Plaintiff asserts that "[t]he District of Columbia and its entities can be held liable" under *Monell*, "when the execution of a government policy, custom, or practice results in the deprivation of a constitutional right." Pl.'s Compl. ¶ 81. She alleges the District and DYRS "maintained formal policies purportedly aimed at preventing sexual abuse and protecting detainees from harm," and that the policies "were systematically, deliberately, and recklessly ignored through a widespread custom and practice of non-enforcement." *Id.* ¶ 83.[2] Plaintiff alleges Defendants failed to investigate repeated complaints of sexual abuse, failed to review surveillance footage showing staff violations, failed to enforce basic safety protocols requiring two staff members present, and tolerated known sexual predators on staff. *Id.* Plaintiff alleges District Defendants' failure "to take reasonable steps to implement or monitor compliance with its own written standards render[ed][] them ineffective and contribut[ed][] to a culture of indifference." *Id.* ¶ 82. Furthermore, she alleges District Defendants failed to implement protocols and safeguards outlined in the National Prison Rape Elimination Act (PREA) Juvenile Standards, *id.* ¶ 86; knew or should have known of Defendant Powell's "repeated abuse of children at YSC long before K.A. arrived," *id.* ¶ 87; knew or should have known of Defendant Powell's rape and sexual abuse of Plaintiff, *id.* ¶ 88; and failed to provide "adequate staffing" to ensure sexual abuse does not occur, *id.* ¶ 89. Plaintiff then alleges, per DYRS policy, two YDRs are to be assigned to each housing unit at all times with one manager per floor, *id.* ¶ 90, and posits Defendant Powell

---

[2]    Plaintiff alleges District Defendants maintained "official policies prohibiting sexual misconduct," and that these policies were "routinely ignored." Pl.'s Compl. ¶ 84.

"was able to sexually assault" Plaintiff because of District Defendants' deliberate indifference to Defendant Powell's ability to visit the girls' A100 unit and remain there alone, *id.* ¶ 91. Plaintiff alleges the District Defendants' "pattern and practice of deliberately failing to properly train, supervise, and discipline correctional officers and staff" as to their responding to sexual abuse, reporting complaints of abuse or misconduct, ensuring adequate staffing, enforcing supervision and separation protocols, and ensuring staff accountability "amounted to a municipal custom or policy of deliberate indifference to the safety and constitutional rights of detainees," *id.* ¶¶ 93–94, and that this deliberate indifference "was the moving force" behind Plaintiff's injuries, *id.* ¶ 96.

In support of the due process claim, Plaintiff, a pretrial detainee at the YSC, *see* Pl.'s Compl. ¶ 203, alleges jail officials were required to take "reasonable measures" to guarantee her safety, *id.* ¶ 204. She alleges Defendant Powell, deprived her "of her basic human need for safety," *id.* ¶ 205, and, as to District Defendants, asserts they failed to train YSC staff concerning contraband control, failed to adequately supervise YSC staff, failed to ensure adequate searches of the housing units, and failed to adequately staff the housing units—deficiencies, she alleges, that proximately caused her "serious, immediate physical and emotional harm," *id.* ¶ 208.

### B.  <u>Common Law Tort Claims</u>

In addition to the constitutional claims, Plaintiff pursues claims of negligence, negligent hiring, training, and supervision, negligent failure to enact and enforce policies to prevent sexual abuse, and negligent and intentional infliction of emotional distress against District Defendants. *See generally* Pl.'s Compl. Plaintiff's claims of sexual assault, *see id.* ¶¶ 217–27, and false imprisonment, *see id.* ¶¶ 228–36, are asserted against Defendant Powell only.

The first three claims, or all common law claims against District Defendants other than those sounding in infliction of emotional distress, largely rely on the same allegations. Plaintiff

7

alleges the District Defendants owed "an affirmative constitutional and statutory duty to protect children in the juvenile detention system," *see* Pl.'s Compl. ¶ 99 (under simple negligence count), and were responsible for the safety and protection of children in DYRS' custody, *see id.* ¶ 130 (negligent hiring, training, and supervision count), ¶ 157 (negligent failure to enact and enforce policies to prevent sexual abuse count). Plaintiff further alleges District Defendants knew or should have known of the high risk for sexual abuse at the YSC, *see id.* ¶¶ 102–03, and of the danger posed by Defendant Powell based on previous instances of sexual abuse or inappropriate conduct toward current or former YSC residents, *see id.* ¶¶ 105–13. Plaintiff also alleges District Defendants breached "their non-discretionary[,] mandatory duties" in failing to supervise YSC staff and Plaintiff, failing to enact or maintain sufficient policies or procedures to prevent sex abuse, failing to ensure any policies were viable, failing to inform children of the risks of sex abuse by YSC staff, failing to investigate sex abuse, failing to train employees to identify signs of sex abuse by fellow employees, and retaining Defendant Powell despite his conduct, *see id.* ¶¶ 120, 140, 142. Plaintiff alleges District Defendants did not employ "obvious measures" to reduce the risk of sex abuse at YSC, such as heightened monitoring in certain situations, prevention of staff access to a resident with pending or previous allegation(s) of sexual misconduct, searches of staff, use of polygraph machines, real-time review of camera feeds, periodic review of archival footage, use of electronic recording devices, exit interviews with residents, random interviews of staff and residents, and frequent, varied, and unannounced rounds by supervisors, *see id.* ¶ 168. Plaintiff alleges Defendants failed to adhere to mandatory reporting obligations under D.C. Code § 4–1321.02, *see id.* ¶ 113, and failed to implement protocol for hiring, training, and supervising staff as outlined in the PREA Standards, *id.* ¶ 137. She alleges she, "a vulnerable child placed at YSC," "was a foreseeable victim" of sex abuse, *id.* ¶ 121, and, as a proximate result of District

Defendants' "deliberately indifferent conduct," Plaintiff was sexually assaulted and abused, and has suffered—and projects to continue to suffer—acute psychological damage, post-traumatic stress disorder, physical injury, emotional anguish, anxiety and depression, emotional distress, loss of trust, diminished opportunity and loss of earning capacity, loss of self-esteem, shame and humiliation, and loss of enjoyment of life, *id.* ¶¶ 123, 125.

In support of the negligent and intentional infliction of emotional distress claims against the District Defendants, Plaintiff alleges District Defendants' relevant failures include (a) failing to train YSC staff on noticing, reporting, and investigating sexual assault at the YSC, (b) failing to investigate claims of sexual assault, (c) failing to adequately staff the YSC, and (d) failing to provide a "safe environment for children," Pl.'s Compl. ¶ 188. Plaintiff alleges "[t]he deliberate acts and egregious omissions" of these Defendants "created an environment of severe, pervasive, and unreasonable danger to Plaintiff," and enabled Defendant Powell to repeatedly sexually assault Plaintiff in spite of their duty to protect her, *id.* ¶ 190.

## LEGAL STANDARD

A party may move for dismissal of a cause of action when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At a motion to dismiss, a court "assume[s] the truth of all well-pleaded factual allegations and construe[s] reasonable inferences from those allegations in a plaintiff's favor." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). A court need not accept as true "legal conclusions couched as factual allegations[,]" *id.*, and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the

facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A complaint will not suffice if it alleges "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

## ARGUMENT

## I.    Plaintiff Fails to State a Constitutional Claim Against Either District Defendant.

Plaintiff's constitutional claims, arising under *Monell*, *see* Pl.'s Compl. ¶¶ 78–97, and due process, *see id.* ¶¶ 202–16, theories of recovery each fail. Plaintiff fails to plausibly present one of the narrow circumstances through which § 1983 liability may attach to the municipality under *Monell*, nor is any standalone due process claim under the Fifth Amendment proper against the District Defendants. Any constitutional claim asserted against the District is properly presented pursuant to *Monell*, while Plaintiff alleges no interaction, let alone any constitutional violation made cognizable under § 1983, against the DYRS Director, Sam Abed.

### A.    The District Is Not Liable Under *Monell* for Harm Inflicted by an Agent.

The District cannot be held liable as a municipality for the individual acts of Defendant Powell, even if the acts occurred in the scope of his employment, because Plaintiff fails to allege one of the narrow instances where a municipality may be held liable. "In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), [the Supreme Court] decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "A city is answerable under *Monell* when an official policy or custom causes the complainant to suffer a deprivation of constitutional right. To hold a municipality accountable, the plaintiff must establish that the official policy or custom

itself is 'the moving force of the constitutional violation.'" *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Monell*, 436 U.S. at 694). "As a municipality, D.C. is not liable under § 1983 for injuries 'inflicted solely by its employees or agents.' Rather, D.C. is liable only if a city policy or practice causes an injury." *Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (quoting *Monell*, 436 U.S. at 694). To plausibly state a claim under *Monell*, the plaintiff must allege "(1) an official policy explicitly adopted by D.C., (2) actions by a D.C. policymaker with final decision-making authority, (3) repeated behavior by D.C. municipal employees that have reached the level of a custom, or (4) a failure to act by D.C. that shows deliberate indifference to the potential for such violations." *Id.* (citation omitted).

Plaintiff's Complaint appears geared toward the latter two means for recovery—repeated behavior by D.C. municipal employees or deliberate indifference—as she fails to present official District policy or action by a District policymaker with requisite decision-making authority. She pleads no allegations as to action(s) by District policymaker(s), *see generally* Pl.'s Compl. ¶¶ 78–97, and only generally refers to "formal policies purportedly aimed at preventing sexual abuse and protecting detainees from harm," *see id.* ¶ 83; "official policies prohibiting sexual misconduct," *see id.* ¶ 84, and *National* PREA Juvenile Standards, *see id.* ¶ 86 (emphasis added). Plaintiff's use of "purportedly" to describe the purpose of certain "formal policies" indicates she is not aware of the scope or even existence thereof, let alone that they are the official policy of, and explicitly adopted by, the District, *see Givens*, 111 F.4th at 122. She also refers to DYRS policy pertaining to escorting residents to make "Level 5" phone calls, *see* Pl.'s Compl. ¶ 88, and to allocation of staff within each housing unit, *id.* ¶ 90, but states no allegation(s) as to how the existence of these policies was the moving force behind any constitutional violation. As in *Givens*, Plaintiff's *Monell* claim fails because she has not "indicated the contours of any type of

municipal policy," *see Givens*, 111 F.4th at 122 (citing *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015)). Where she does, Plaintiff laments that policy was not adhered to, not that adherence to the policy itself was the reason for the violation, like in *Monell*, where official policy at certain governmental entity employers compelled pregnant employees to take unpaid leave before they were medically required to do so, *see* 436 U.S. at 660–61.

Likely in acknowledgment of these pleading deficiencies, Plaintiff relies on Defendant Powell's "repeated" acts of abuse, *see, e.g.*, Pl.'s Compl. ¶¶ 35, 50, 87, and District Defendants' "deliberate indifference," *see, e.g.*, *id.* ¶¶ 6, 77, 94, 96, to sustain her *Monell* claim. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). *See also id.* at 404 (stating "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law" (citing *Monell*, 436 U.S. at 690–91)). "To support a finding of municipal liability, a policy or custom must be pervasive." *Tafler v. District of Columbia*, 539 F.Supp.2d 385, 392 (D.D.C. 2008) (citing *Carter*, 795 F.2d at 123).

As to the repeated acts theory, Plaintiff points to Defendant Powell's sexual abuse of Plaintiff over a three-month period, *see id.* ¶¶ 35, 41, as well as other one-off allegations that Defendant Powell engaged in sexual or inappropriate conduct with other YSC residents, *see id.* ¶ 59 (alleging he engaged in sexual intercourse with a YSC resident for money in 2018), ¶ 66 (alleging he touched another girl's buttocks and thighs and made sexual comments to her), ¶ 68 (alleging he touched another girl's crotch area), ¶ 73 (alleging he facilitated sex between young

girls and DYRS staff). Plaintiff does not plead sufficient facts to demonstrate the adoption of a custom across an agency through one rogue employee's acts. For any employees other than Defendant Powell, Plaintiff only alleges that, one time in February 2022, YDR Young showed Plaintiff and other girls nude photos on her phone and discussed her sex life, *see id.* ¶¶ 53–54, which cannot be interpreted as amounting to a constitutional violation (*see infra*), and that, relying on an "[u]pon information and belief" qualifier and without one example thereof, Defendant Powell facilitated sex between girl residents of YSC and staff, *see id.* ¶ 73. To establish *Monell* liability as result of a failure to act, "a plaintiff must plead 'specific incidents that plausibly show a custom or pattern of behavior[.]'" *Thomas v. District of Columbia*, No. 21-cv-00584 (CRC), 2021 WL 5769443, at *2 (D.D.C. Dec. 6, 2021) (quoting *Tyson v. District of Columbia*, No. 20-cv-1450 (RC), 2021 WL 860263, at *5 (D.D.C. Mar. 8, 2021)).

As to the deliberate indifference theory, it means that "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). Deliberate indifference may be established by demonstrating the municipality's "failure to respond to repeated complaints about misconduct." *Tyson*, No. 20-cv-1450 (RC), 2021 WL 860263, at *6 (citation and internal quotation marks omitted). *See also id.* (noting the plaintiff must allege facts "that show a pattern of misconduct that municipality officials ignored"). Plaintiff alleges a pattern of misconduct by Defendant Powell, but she does not allege facts beyond legal conclusions to support that District personnel were on actual or constructive notice of a deprivation of Plaintiff's constitutional rights. A failure to respond to repeated *complaints* of misconduct is not the same as one to respond to repeated *instances* of misconduct. To the extent Plaintiff alleges any investigation of Defendant Powell's

conduct, it is generally as to the absence thereof, *see, e.g.*, Pl.'s Compl. ¶ 63 (noting a failure to ever investigate Defendant Powell); *see also id.* ¶ 83 (alleging, without any examples, a "failure to investigate repeated complaints of sexual abuse"), ¶ 172 (referencing, without any examples, "residents' complaints"). For these purported complaints, Plaintiff presents no allegations as to what conduct specifically was complained of, when, by whom, or to whom. Plaintiff points to surveillance footage that she alleges captured odd or even inappropriate behavior by Defendant Powell, *see id.* ¶¶ 35, 44–48, but no facts from which it may be reasonably inferred District agents were on actual or constructive notice that Defendant Powell or other DYRS personnel would "probably" violate Plaintiff's constitutional rights. She alleges Defendant Powell entered Plaintiff's cell alone and stayed "for several seconds," *id.* ¶ 45; that he looked back and forth before entering and exiting, *id.* ¶ 46; that he gestured for Plaintiff to enter her room and followed behind her, *id.* ¶ 47; and that he adjusted his mask as he entered and exited Plaintiff's room, *id.* ¶ 48. She alleges that, one time in December 2021, surveillance footage captured Defendant Powell placing his hand(s) on Plaintiff's buttocks as she was decorating a door for Christmas, *id.* ¶ 35, but one instance itself cannot represent a pattern of misconduct. *See, e.g., Harris v. Gov't of District of Columbia*, No. 18-cv-2390 (ABJ), 2019 WL 3605877, at *4 (D.D.C. Aug. 6, 2019) ("To survive a motion to dismiss, a plaintiff pleading a deliberate indifference claim must allege specific facts that would demonstrate the alleged *pattern* of misconduct" (emphasis added)).

Regardless of *Monell* theory, Plaintiff must allege (a) predicate constitutional violation(s) to survive a motion to dismiss. *See, e.g., Warren*, 353 F.3d at 39 (finding, *e.g.*, a plaintiff may prevail under a deliberate indifference theory where they prove (1) constitutional violations and (2) the District's actual or constructive knowledge thereof). Though some courts have recognized

a substantive due process right to bodily integrity,[3] *see, e.g.*, *Roe v. Wilson*, 365 F.Supp.3d 71, 79 (D.D.C. 2019) (for discussion in the public-school context), "verbal conduct alone—even when unprofessional or inappropriate—does not rise to the level of a substantive due process violation based on [one's] right to bodily integrity," *id.* at 84–85. Where Plaintiff relies on sexual commentary from Defendant Powell, *see* Pl.'s Compl. ¶ 66, or others, *see id.* ¶¶ 53–54, that is insufficient to support a predicate constitutional violation. Plaintiff likely can assert a predicate constitutional violation based on her right to bodily integrity, or to not be sexually abused under color of law, for the physical acts of abuse alleged to have been committed by Defendant Powell, *see Parker v. District of Columbia*, 293 F.Supp.3d 194, 201–02 (D.D.C. 2018), but her *Monell* claim against the District fails for want of any of the four avenues toward recovery set forth in *Givens*: certain official policy, actions by a District policymaker, repeated behavior by District employees to reach the level of a custom, or deliberate indifference.

**B.**    **Plaintiff Cannot Sustain a Municipal Liability Claim Against Director Abed, an Individually Named Defendant Sued in His Official Capacity.**

Plaintiff appears to pursue a municipal liability claim against Director Abed, *see* Pl.'s Compl. ¶ 78, which is improper. As discussed again *infra*, Director Abed is sued in his official capacity, *see* Pl.'s Compl. ¶ 18 ("Defendant Sam Abed . . . is the Director of DYRS and is being sued in his official capacity"), which means suit is proper instead against the District, *see Kentucky v. Graham*, 473 U.S. 159, 165–66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" (quoting *Monell*, 436 U.S. at 690 n.55)). "There is no longer a need to bring official-capacity

---

[3]    Plaintiff does not expressly claim a violation of her substantive due process right to bodily integrity. *See generally* Pl.'s Compl. Instead, she alleges Defendant Powell, "acting under the color of law, deprived K.A. of her basic human need for safety . . . ." *See id.* ¶ 205. *See also id.* ¶ 204 (also alleging she was subjected to pretrial detention that amounts to punishment).

actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 n.14 (citation omitted). "It is well settled that if the plaintiff is suing the defendants in their official capacities, the suit is to be treated as a suit against the District of Columbia." *Arnold v. Moore*, 980 F.Supp. 28, 36 (D.D.C. 1997) (citing *Graham*, 473 U.S. at 166). Because Plaintiff already asserts a municipal liability claim against the District, *see* Pl.'s Compl. ¶ 78 (for subheading above asserting municipal liability claims "[a]gainst Defendants District of Columbia and DYRS"), any separate municipal liability claim against Director Abed, not the municipality, is duplicative.

### C.    Plaintiff's Standalone Substantive Due Process Claims Are Improperly Asserted Against the District and Director Abed.

Similarly, Plaintiff's standalone substantive due process claims under § 1983, *see* Pl.'s Compl. ¶¶ 202–16, are not proper against the District Defendants. The § 1983 claim against the District is available as a *Monell* claim for municipal liability, with the substantive due process claim under the Fifth Amendment as the predicate constitutional violation. *See, e.g.*, *Warren*, 353 F.3d at 39. And no Fifth Amendment claim is proper against Director Abed, who Plaintiff does not allege abused her or even interacted with her. Vicarious liability being "inapplicable" to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff merely alleges that "Defendant Powell, acting under the color of law, deprived K.A. of her basic human need for safety . . . ." *See* Pl.'s Compl. ¶ 205. Any other allegations presented in this section as to Director Abed are duplicative of the *Monell* allegations. *See id.* ¶ 208 (faulting District Defendants' certain customs and policies at the YSC).

### II.    Most of Plaintiff's (Largely Duplicative) Negligence or Negligence-Adjacent Claims Fail Against the District Defendants.

16

Plaintiff's common law claims against the District Defendants are ripe for reduction, as she presents largely duplicative claims based in negligence—(1) simple negligence, (2) negligent hiring, training, and retention, and (3) negligent failure to enact and enforce policies that would prevent sexual abuse. Plaintiff presents a simple negligence claim against the District that is not subject of this motion.[4] But Plaintiff's negligence claim against Director Abed, who is sued in his official capacity, *see* Pl.'s Compl. ¶ 18, is properly imputed to the District. The negligent hiring, training, and retention claim is a repeat of the negligence claim against the District, and Plaintiff does not plead the requisite facts to state a claim regardless. Negligent failure to enact and enforce policies that would prevent sexual abuse is not a recognized tort.

A.  **Official-Capacity Negligence or Negligence-Adjacent Claims Against Director Abed Are Proper Against the District Only.**

Plaintiff's negligence and negligence-adjacent claims are improper against Director Abed, who is sued in his official capacity, *see* Pl.'s Compl. ¶ 18. As discussed *supra*, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Graham*, 473 U.S. at 165–66 (quoting *Monell*, 436 U.S. at 690 n.55). Seeing Plaintiff already pleads these same causes of action against the District, *see, e.g.*, Pl.'s Compl. ¶¶ 98–128 (enumerating negligence claim against the District and Director Abed), ¶¶ 129–55 (negligent hiring, training, and supervision claim against the two defendants), ¶¶ 156–85 (negligent failure to enact and enforce policies that would prevent sexual abuse against the two defendants), these same ones asserted against Director Abed should be dismissed.

B.  **Plaintiff's Negligent Hiring, Training, and Supervision Claims, Her First Negligence Variation, Fails for Want of the Required Elements.**

---

[4]    The District will answer this claim upon resolution of District Defendants' Partial Motion to Dismiss Plaintiff's Complaint, in accordance with Fed. R. Civ. P. 12(a)(4)(A).

Plaintiff presents negligent hiring, training, and supervision claims against the District Defendants, *see* Pl.'s Compl. ¶¶ 129–55, that are not appropriate against either. As to Director Abed, the District Defendants rely on the official-capacity arguments asserted *supra*, as well as—despite his high-ranking position—him not necessarily being an employer.

Starting with negligent hiring, the easiest of these claims to discard, "[i]n the District of Columbia, employers operating public businesses are generally bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee." *Search v. Uber Techs., Inc.*, 128 F.Supp.3d 222, 229 (D.D.C. 2015) (citation and internal quotation marks omitted). "[T]o state a claim for negligent hiring, a plaintiff must allege specific facts from which an inference can be drawn that the employer did not conduct a reasonable background investigation, and that such an investigation would have uncovered a reason not to hire the alleged tortfeasor." *Id.* at 230. Here, Plaintiff alleges no such, or any, facts pertaining to Defendant Powell's hiring, but rather she relies entirely on legal conclusions that alone are insufficient to sustain a claim past a motion to dismiss. *See, e.g.*, Pl.'s Compl. ¶ 136 (alleging "[t]he Defendants were negligent in their hiring . . . of Mr. Powell in that they knew, or should have known, through the exercise of ordinary care, that the conduct of Mr. Powell would subject third parties to an unreasonable risk of harm, including the propensity of Mr. Powell to sexually abuse children in their charge"); ¶ 146 (faulting the District Defendants for "negligently hiring, training, supervising, and retaining Mr. Powell").

Plaintiff's negligent training and supervision claims fail for want of plausible allegations of the District's actual or constructive notice of Defendant Powell's wrongdoing. "Liability for negligent supervision arises when an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with

that actual or constructive knowledge, failed to adequately supervise the employee." *Godfrey v. Iverson*, 559 F.3d 569, 571 (D.C. Cir. 2009) (citation and internal quotation marks omitted). *See also Xingru Lin v. District of Columbia*, No. 16-cv-645 (CKK), 2019 WL 1597876, at *11 (D.D.C. Apr. 15, 2019) (stating substantially similar standard for negligent training); *Spiller v. District of Columbia*, 302 F.Supp.3d 240, 255 (D.D.C. 2018) (noting for negligent training or supervision claim to survive dismissal, the plaintiff must plead facts to give rise to reasonable inference that District personnel were on actual or constructive notice of dangerous or incompetent behavior "*prior*" to the incidents at issue (emphasis in original)).

Beyond conclusory assertions of actual or constructive notice, *see, e.g.*, Pl.'s Compl. ¶ 136 (". . . in that they knew, or should have known, through the exercise of ordinary care . . ."), ¶ 140 (". . . in that they knew, or should have known, through the exercise of ordinary care . . ."), Plaintiff does not plead the District Defendants maintained actual knowledge of Defendant Powell's conduct, and, to support an allegation of constructive knowledge, merely lament that "Defendants did not watch their own cameras and did not investigate other incidents of sexual assault," *see id.* ¶ 141. But, as discussed *supra* under the *Monell* analysis, Plaintiff fails to plead prior complaints of sexual assault with any specificity, *see, e.g., id.* ¶ 83 (noting, without further detail, "repeated complaints of sexual abuse"), ¶ 172 (noting, without further detail, "residents' complaints"), and—as it pertains to the surveillance footage—she only alleges it captured Defendant Powell placing his hands on Plaintiff's buttocks one time in December 2021, *see id.* ¶ 35. Plaintiff presents no allegations as to how many cameras were placed throughout the YSC, how many YSC personnel were assigned to monitor them in real-time, or whether personnel were ever tasked to review archival footage, from which it may be reasonably inferred District

Defendants, acting under a reasonable standard of care, should have been on notice Defendant Powell behaved dangerously or incompetently.

Similarly, Plaintiff's allegations of past bad acts suffer a similar fate. Plaintiff alleges Defendant Powell engaged in sexual intercourse with a 17-year-old resident for money in 2018, *see id.* ¶ 59, at least three years prior to the incidents at issue here, but does not allege any other employee(s) were tracking this incident or that any complaint was filed. She alleges Defendant Powell showed a video to two YSC personnel of him receiving oral sex from the 17-year-old resident, *see id.* ¶ 60, but does not reference any date or time, *see* Fed. R. Civ. P. 9(f) ("An allegation of time or place is material when testing the sufficiency of a pleading"). For other allegations of inappropriate acts by Defendant Powell, relying for a time interval on "[d]uring his time working at YSC," *see* Pl.'s Compl. ¶¶ 65, 68, or "[d]uring his time working for DYRS," *see id.* ¶¶ 69, 71—which, on the limited record before us at a Fed. R. Civ. P. 12(b)(6) motion to dismiss, could be four years or 40—Plaintiff also states no allegations as to any complaint, investigation, or third-party knowledge thereof to support the claim of constructive notice.

C.    **Plaintiff's Negligent Failure to Enact and Enforce Policies to Prevent Sexual Abuse Is Not a Recognized Claim and Duplicative of Others.**

This claim, *see* Pl.'s Compl. ¶¶ 156–85, the second negligence variation, appears to be an attempt to hold the municipality liable for a failure to enforce its policies, as result of a special relationship between the District Defendants and Plaintiff as a minor in DYRS's custody. *See Platt v. District of Columbia*, 467 A.2d 149, 152 (D.C. 1983). *See also* Pl.'s Compl. ¶ 157 (alleging a special relationship between Defendants and "children in the custody of DYRS"). But even if such a legal relationship exists, the undersigned could otherwise identify no authority to support such a negligent failure to enforce claim being a viable, standalone cause of action, as it is duplicative of the negligence claim against the District that the District Defendants do not

herein move to dismiss. Nevertheless, Plaintiff here mostly takes issue with District Defendants'

failure to *enact*, not enforce, certain policies to protect residents. *See, e.g.*, Pl.'s Compl. ¶ 160

(faulting District Defendants' failure to implement policies consistent with National Juvenile

PREA Standards), ¶ 166 (faulting District Defendants' failure "to enact adequate instructions or

procedures" for children in DYRS custody to report sex abuse), ¶ 167 (faulting their failure "to

enact adequate rules and policies" to monitor and discipline certain staff). Though *Platt* contains

some discussion of negligent failure to enforce policy, no such discussion of a negligent failure

to enact policy could be identified. Dismissal of these claims is warranted.

## III.    Plaintiff's Infliction of Emotional Distress Claims Fail Against District Defendants.

Lastly with respect to the District Defendants, Plaintiff pursues intentional and negligent

infliction of emotional distress claims, *see* Pl.'s Compl. ¶¶ 186–90, that are improper. Though

District Defendants do not necessarily dispute that Plaintiff plausibly alleges she was subjected

to extreme and outrageous conduct, *see Cooper v. District of Columbia*, 548 F.Supp.3d 170, 183

(D.D.C. 2021) (citing *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211 (D.C. 1997))

(stating elements for IIED claim), that claim would only be proper against Defendant Powell. For

Plaintiff to establish the District is responsible, under a theory of respondeat superior, for the

intentional torts of Defendant Powell, she must demonstrate that the tortious conduct occurred

while Defendant Powell acted within the scope of his employment. *Lewis v. District of

Columbia*, 768 F.Supp.3d 76, 115 (D.D.C. 2025). *See also id.* (noting an employee's conduct is

within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs

substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part,

by a purpose to serve the master" (citations and internal quotation marks omitted)). Plaintiff does

not allege Defendant Powell sexually abused her consistent with any purpose to serve his

employer, DYRS, nor does she allege such acts are of the type he is employed to perform as a YDR. Her attempts to pass off District Defendants' purported failures to train, investigate, staff, and provide a safe environment for children, *see* Pl.'s Compl. ¶ 188, are duplicative of the allegations underlying her negligence claim. Plaintiff does not allege any basis to hold Director Abed vicariously liable for Defendant Powell's intentional torts. *See generally* Pl.'s Compl.

As to any negligent infliction of emotional distress claim against the District Defendants, the third variation of a negligence claim in this Complaint, these are available only under certain circumstances that are not pleaded here. Under District of Columbia law, a plaintiff can recover for negligent infliction of emotional distress under (1) the zone-of-danger test or (2) if a special relationship exists between the parties. *See Lesesne v. District of Columbia*, 146 F.Supp.3d 190, 195 (D.D.C. 2015) (citing *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796, 810–11 (D.C. 2011)). Though Plaintiff in this case three times alleges a special relationship between Plaintiff and District Defendants, *see* Pl.'s Compl. ¶¶ 99, 134, 157, courts have been reluctant to recognize a special relationship between correctional officers and persons in custody, *see, e.g.*, *Lesesne*, 146 F.Supp.3d at 196 (in not recognizing such relationship between Department of Corrections staff member and person in their custody, noting a commonality among special relationships "the exchange of services for the benefit of a client or patient"). The Court was "not convinced" that "a custodial relationship undertaken by law enforcement" constitutes a special relationship for purposes of NIED, *see id.*; Plaintiff here three times cites District Defendants' "custodial role," *see* Pl.'s Compl. ¶ 158, "custodial control," *see id.* ¶ 194, and "the custodial setting," *see id.* ¶ 206. The zone-of-danger test is similarly inapplicable to Plaintiff's claims. For one, Plaintiff presents no allegations as to being in a physical zone of danger, *see, e.g.*, *Williams v. Baker*, 572 A.2d 1062, 1066–67 (D.C. 1990) (explaining this test as allowing recovery for

"physical consequences of fright" where the plaintiff "was in the zone of physical danger"), nor does she specifically allege any presence in the physical zone of danger as contemporaneous with any fear for her own safety, *see Lesesne*, 146 F.Supp.3d at 196. *See also* Pl.'s Compl. ¶¶ 180, 196, 211, 222, 231 (alleging repeatedly only "Plaintiff has suffered, and will continue to suffer . . . emotional distress[,]" not specifically when it was incurred).

## CONCLUSION

For the foregoing reasons, District Defendants request that the Court grant this motion and dismiss the relevant portions of Plaintiff's Complaint against them.

Date: October 6, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ George Eppsteiner/FA*
GEORGE EPPSTEINER [90036366]
Chief, Section I
Civil Litigation Division

*/s/ Patrick Duprey*
STEPHANIE M. CORCORAN [1510874]
PATRICK DUPREY [90030521]
Assistant Attorneys General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
(202) 615-3910
(202) 957-2861
stephanie.corcoran@dc.gov
patrick.duprey@dc.gov

***Counsel for Defendants District of Columbia, Director Sam Abed***